J-S08033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA      :      IN THE SUPERIOR COURT OF
:                  PENNSYLVANIA
:
v.                            :
:
:
RICHARD WOODWARD,                 :
:
Appellant            :           No. 1090 WDA 2015

Appeal from the PCRA Order June 25, 2015
in the Court of Common Pleas of Allegheny County,
Criminal Division, No(s): CP-02-CR-0012298-2010

BEFORE:  STABILE, DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED FEBRUARY 29, 2016**

Richard Woodward ("Woodward") appeals from the Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

In its Opinion, the PCRA court concisely set forth the relevant factual and procedural history underlying this appeal.  **See** PCRA Court Opinion, 9/22/15, at 1-4.  We adopt the court's recitation as though fully set forth

J-S08033-16

herein. *See id.*[1, 2]

On appeal, Woodward presents the following issue for our review:

Did the [PCRA] court err in denying [Woodward's] PCRA Petition since trial counsel was ineffective for failing to file a suppression motion challenging the voluntariness of [Woodward's inculpatory] hospital bed statement to police detectives[,] since the only evidence connecting [Woodward] to the instant crimes came from that statement, and [Woodward] was drugged and incoherent when he gave the statement[,] since he had been administered pain killers because of his gunshot wound?

Brief for Appellant at 3 (capitalization omitted).

This Court examines PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record. Additionally, we grant great deference to the factual findings of the PCRA court[,] and will not disturb those findings unless they have no support in the record. In this respect, we will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. However, we afford no deference to its legal conclusions.

*Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)

(internal citations, quotation marks and brackets omitted).

---

[1] We additionally observe that while Woodward was being treated at the hospital for his gunshot wound, of his own accord he asked to speak with the lead detective investigating the shootings, Margaret Sherwood ("Detective Sherwood"). N.T., 8/29/11-9/2/11 (trial), at 479. On July 15, 2010, five days after the shootings, Detective Sherwood interviewed Woodward, in his hospital room, in the presence of a fellow detective. *Id.* Prior to interviewing Woodward, Detective Sherwood read Woodward his *Miranda* rights, and gave him an opportunity to read and sign a *Miranda* rights waiver form. *Id.* at 480-81.

[2] At trial, Woodward was represented by Christy Foreman, Esquire ("trial counsel").

- 2 -

To prevail on a claim of ineffectiveness of counsel, the PCRA petitioner must demonstrate "(1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness[.]" ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations omitted). The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet any of these prongs. ***Commonwealth v. Franklin***, 990 A.2d 795, 797 (Pa. Super. 2010). Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness. ***Id.***; ***see also Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011) (stating that "[w]hen evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and internal quotation marks omitted)).

Regarding the first prong of the ineffectiveness test, if the petitioner's underlying claim lacks arguable merit, his or her derivative claim of counsel's ineffectiveness necessarily fails. ***Commonwealth v. Baumhammers***, 92 A.3d 708, 722 n.7 (Pa. 2014). Concerning the second prong, our Pennsylvania Supreme Court has stated that

> [g]enerally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted). Regarding the third, "prejudice prong," it must be demonstrated that, absent counsel's conduct, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super. 2014).

In considering Woodward's claim that his inculpatory statements were subject to suppression for being involuntarily given, we are mindful of the following. "When a court is called upon to determine whether a confession is voluntary and, hence, admissible at trial, it examines the totality of the circumstances surrounding the confession to ascertain whether it is the product of an essentially free and unconstrained choice by its maker." *Commonwealth v. Smith*, 85 A.3d 530, 537 (Pa. Super. 2014) (citation omitted). "By the same token, the law does not require the coddling of those accused of crime. One [] need not be protected against his own innate desire to unburden himself." *Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002) (citation omitted).

> When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion. The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review.

*Commonwealth v. Harrell*, 65 A.3d 420, 434 (Pa. Super. 2013) (citations and quotation marks omitted).

Woodward argues that the PCRA court erred by failing to find that trial counsel was ineffective for not seeking to suppress Woodward's inculpatory statements, as they were "involuntary due to [Woodward's] drugged state during the interview[.]" Brief for Appellant at 24. According to Woodward,

> he was so medicated [at the time of making his statements] that he was not thinking clearly[,] and [he] has no recollection of anything that the police put in their report regarding the interview[.] [Woodward's] contention is not disputed by the Commonwealth since there is no indication that the detectives checked to see what medication, or the quantity, [that Woodward] had been prescribed by doctors, or checked with hospital personnel to determine if [he] was lucid enough to interview.

*Id.* at 23-24. Woodward avers that "[t]he evidence regarding [his] alleged statements to police was exceedingly damaging since it detailed his involvement in the instant crimes, and[,] without that evidence[,] there is a great likelihood that he would have never been convicted of any of the instant crimes, but especially [second-degree m]urder[.]" *Id.* at 23. Moreover, Woodward contends that, contrary to trial counsel's position regarding her defense strategy, she had no reasonable basis for failing to suppress Woodward's involuntary statements. *Id.* at 24.

In its Opinion, the PCRA court adeptly addressed Woodward's claims and determined that trial counsel was not ineffective. *See* PCRA Court Opinion, 9/22/15, at 6-8. In sum, the PCRA court determined that

Woodward had failed to establish any of the three prongs of the ineffectiveness test, since (1) the mere fact that Woodward may have been on pain medication at the time of his statements,[3] absent more, is not sufficient to warrant suppression; (2) trial counsel articulated a reasonable basis for making the conscious and strategic decision not to seek suppression; and (3) the outcome of Woodward's trial would not have been different had trial counsel sought suppression. *Id.* at 6-7. The PCRA court's analysis is supported by the record and the law, and we agree with its determination that Woodward failed to meet his burden to prove that trial counsel was ineffective. Accordingly, we affirm on this basis in rejecting Woodward's sole issue on appeal. *See* PCRA Court Opinion, 9/22/15, at 6-

---

[3] Woodward failed to advance any evidence that he was, in fact, on pain medication at the time of his statements to Detective Sherwood.

J-S08033-16

8.[4]

As we conclude that the PCRA court neither abused its discretion nor committed an error of law, we affirm the Order dismissing Woodward's PCRA Petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/29/2016

---

[4] As an addendum, we observe that Woodward failed to establish that his inculpatory statements were involuntary and subject to suppression. Contrary to Woodward's above assertion, Detective Sherwood's testimony shows that not only was Woodward alert and responsive to questioning, but he was also able to communicate normally, including in his attempt to initially disclaim his association with the robbers, before changing his story upon being presented with evidence establishing his involvement. *See* N.T., 8/29/11-9/2/11, at 480-87; *see also Commonwealth v. McQuaid*, 417 A.2d 1210, 1213 (Pa. Super. 1980) (wherein this Court held that the inculpatory statement given by the defendant to police was voluntary notwithstanding that it was made in a hospital setting where the defendant was being treated for a gunshot wound to the head, as the defendant had spoken after being read his *Miranda* rights and appeared to be alert and responsive to the detectives' questions); *Commonwealth v. Hunt*, 398 A.2d 690, 693 (Pa. Super. 1979) (*en banc*) (where the appellant was interviewed in his hospital bed while being treated for a stab wound, holding that his inculpatory statements were voluntary, since appellant was alert and responsive. The Court also rejected the appellant's argument that "the interrogating officer should have made inquiry as to appellant's medical condition and what medication had been administered to him[.]").

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA

v.                                                    CC: 201012298

RICHARD WOODWARD, III,

Defendant

## OPINION

The Defendant has appealed from the Order of Court dated June 25, 2015, which dismissed his Amended Post Conviction Relief Act Petition without a hearing. However, a review of the record reveals that the Defendant has failed to present any meritorious issues on appeal and, therefore, the judgment of sentence must be affirmed.

The Defendant was charged with Criminal Homicide,[1] Criminal Attempt,[2] Assault of a Law Enforcement Officer,[3] Aggravated Assault of a Police Officer,[4] Robbery,[5] Burglary,[6] Carrying a Firearm Without a License,[7] Recklessly Endangering Another Person,[8] Criminal

---

[1] 18 Pa.C.S.A. §2501(a)

[2] 18 Pa.C.S.A. §901(a) – 5 counts

[3] 18 Pa.C.S.A. §2702.1A – 3 counts

[4] 18 Pa.C.S.A. §2702(a)(2) – 5 counts

[5] 18 Pa.C.S.A. §3701(a)(1)(I)

[6] 18 Pa.C.S.A. §3502(c)(1)

[7] 18 Pa.C.S.A. §6106(a)(1)

[8] 18 Pa.C.S.A. §2705 – 4 counts

Conspiracy[9] and Aggravated Assault.[10]  Prior to trial, the Aggravated Assault, Aggravated Assault of a Police Officer, Assault of a Law Enforcement Officer and Criminal Attempt charges were withdrawn.  Following a jury trial, the Defendant was found guilty of second-degree murder and the remaining charges.

On December 15, 2011, the Defendant appeared before this Court and was sentenced to a mandatory term of life imprisonment.  Post-Sentence Motions were timely filed and were denied by operation of law on April 20, 2012.  The judgment of sentence was affirmed by the Superior Court on June 3, 2012.  A timely Petition for Allowance of Appeal was filed and was denied by our Supreme Court on December 19, 2013.

No further action was taken until July 24, 2014, when the Defendant filed a pro se Post Conviction Relief Act Petition.  Counsel was appointed to represent the Defendant and an Amended Petition followed.  After reviewing the Petition and record, and giving the appropriate notice of its intent to do so, this Court dismissed the Amended Petition without a hearing.  This appeal followed.

By way of a brief review, the evidence presented at trial established that Arika Hainesworth and her four (4) year old son, Kyere, lived at 2340 East Hills Drive in the City of Pittsburgh. Ms. Hainesworth's boyfriend, Anthony Lemon, stayed at the house occasionally, but was known to keep drugs and money in the house.

In the early morning hours of July 11, 2010, the Defendant, Richard Woodward, along with two other men, co-Defendants Tyree Gaines and Amir Ferguson, broke into Hainesworth's

---

[9] 18 Pa.C.S.A. §903(a)(1)

[10] 18 Pa.C.S.A. §2702(a)(2)

2

residence for the purpose of stealing the drugs and money they knew to be in the house. The three (3) men initially approached the front door and knocked, then left. Hainesworth, who was at home watching movies with her friends and son, looked out of the peep-hole in the door and saw the men wearing black clothing and scarves over their faces. She called another friend, Terry Johnson, who had just left, and asked him to look around the area. Johnson did not see anyone and returned to Hainesworth's residence.

Approximately fifteen minutes later, the three men knocked again. This time Johnson looked out the peep-hole and after seeing the three (3) men, he instructed everyone to go upstairs and hide and to call the police. The group hid in Kyere's room, some inside the closet and some behind the bed. Hainesworth was on the phone with 911 when the men broke the front door down and entered the house. The men searched the downstairs level of the home, but were unable to find the drugs and money. Two (2) of the men went upstairs and broke down the door of the bedroom where everyone was hiding. They demanded that Hainesworth tell them where the drugs and money were, and when she did not, they grabbed Kyere, put the gun to his head and asked him where the items were. Kyere directed them to an air vent, where they found some money. They then let Kyere go, but put the gun to Hainesworth's head and forced her to take them to the drugs. Hainesworth and the men went downstairs, when the Defendant, who had been standing by the patio door with an assault rifle, yelled that the police had arrived. The men ran upstairs.

The Defendant ran into the bedroom, kicked out the window screen and jumped out of the window. Shots were fired at the police from inside the house and the officers returned fire. The Defendant was shot in the back as he was fleeing the scene.

3

Downstairs, City of Pittsburgh Police Officer Steven Sywyj had entered the house in pursuit of the men. He encountered Hainesworth and told her to get out of the house. As she fled, she was hit with a bullet fired from the house. Johnson came out of the room in an attempt to find and aid Hainesworth and was shot in the hand. Eventually, Gaines and Ferguson were able to escape the police, but were apprehended several days later.

The Defendant was transported to Presbyterian Hospital for treatment for his gunshot wound. Several days later, he asked to speak to the lead Detective on the case. He was interviewed by Detective Margaret Sherwood, and initially told her that he went to the house to buy drugs and ended up in the middle of a shootout. When confronted with other information that the police had already learned, the Defendant said that he met up with two men whom he would not name, and went to the house to conduct a robbery. The men were driven to the house by a woman in a dark-colored vehicle. They broke into the house by kicking the door down and searched for drugs and money. When Gaines and Ferguson went upstairs to continue their search, he stayed downstairs with the assault rifle and acted as a lookout. He shouted when he saw the police approach, then ran upstairs, jumped out the window and ran. A subsequent search of the scene revealed a bag with 47 bricks of heroin, having a street value of approximately $17,450.00.

On appeal, the Defendant argues that trial counsel was ineffective for failing to file a Motion to Suppress the Defendant's statement to the police. A review of the record reveals that this claim is meritless.

In order to establish a claim for the ineffective assistance of counsel, "a PCRA Petitioner must demonstrate, by a preponderance of the evidence, that: (1) the underlying claim is of

4

arguable merit; (2) no reasonable basis existed for counsel's action or inaction; and (3) there is a reasonable probability that the result of the proceedings would have been different absent such error." Commonwealth v. Gibson, 19 A.3d 512, 525-26 (Pa. 2011). "The law presumes that counsel was not ineffective, and the appellant bears the burden of proving otherwise...[I]f the issue underlying the charge of ineffectiveness is not of arguable merit, counsel will not be deemed ineffective for failing to pursue a meritless issue... Also, if the prejudice prong of the ineffectiveness standard is not met, 'the claim may be dismissed on that basis alone and [there is no] need [to] determine whether the [arguable merit] and [client's interests] prongs have been met.'" Commonwealth v. Khalil, 806 A.2d 415, 421-2 (Pa.Super. 2002). "With regard to the reasonable basis prong, [the appellate court] will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that the alternative strategy not elected offered a potential for success substantially greater than the course acutely pursued." Commonwealth v. Busanet, 54 A.3d 35, 46 (Pa. 2012).

Additionally, "[w]here the challenge is to a failure to move for suppression of evidence, the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable." Commonwealth v. Melson, 556 A.2d 836, 839 (Pa.Super. 1989).

It is well-established that "'When deciding a motion to suppress a confession, the touchstone inquiry is whether the confession was voluntary. Voluntariness is determined from the totality of the circumstances surrounding the confession. The question of voluntariness is not whether the defendant would have confessed without interrogation, but whether the interrogation

5

was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess. The Commonwealth has the burden of proving by a preponderance of the evidence that the defendant confessed voluntarily'...'When assessing voluntariness pursuant to the totality of the circumstances, a court should look at the following factors: the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion.'" Commonwealth v. Harrell, 65 A.3d 420, 433-34 (Pa. 2014), *internal citations omitted.*

As noted above, the Defendant contacted Detective Sherwood and asked to speak with her. He initially stated that he had gone to the house to buy drugs and ended up in a shootout, but when confronted with evidence from the surveillance video, he then stated that he acted as a lookout but ran through the house, jumped out a window and fled when the police arrived. He now asserts that his "confession" was involuntary because he was receiving pain medication for his bullet wound.

The fact that the Defendant was receiving pain medication for his injury does not itself provide a sufficient basis for suppression of the confession. The Defendant makes no other assertions regarding the nature of the interrogation, does not claim that he was tricked, manipulated, beaten or otherwise coerced. Under these circumstances, the use of pain medication is not sufficient to warrant suppression of his confession.

Moreover, the record reflects that trial counsel made a strategic decision not to seek suppression. She stated:

6

I did in fact tell him that I did not want to suppress the statement. First, while he may have had some medication, from the details he could relate about giving the statement to the police, that led me to believe he gave the statement (statements I should say) knowingly. Plus, I know Judge McDaniel would never suppress the statement as there was just not enough to say it was involuntary. More importantly, the ONLY defense I had to his Felony Murder case was renunciation. I told him that I did not want the statement suppressed as that was the best evidence I had to try to argue that while he may have participated in the Robbery, that he had renounced that participation in that crime before the homicide took place by kicking out the 2nd story window and jumping out to run away and subsequently [was] shot in the back. The placement of the gunshot wound would substantiate he was shot while running away PRIOR to Ms. Hainesworth being shot by the other co-defendant from the upstairs window. It is the defense I used at trial, and while it unfortunately did not work, it was the ONLY thing I had as far as felony murder.

(Amended PCRA Petition, p. 20).

Ms. Foreman's statement, read in conjunction with the record, demonstrates that she did have a reasonable basis for not seeking suppression and so made a conscious and strategic decision not to. Ms. Foreman was correct in that, as discussed above, this Court would not have granted a Motion to Suppress based on these facts, and so there would not have been a different result. Moreover, Ms. Foreman is also correct that the Defendant's statement provided a basis for a renunciation defense, which would not have been available to her if the statement had been suppressed.

Ultimately, the Defendant has not established that trial counsel was ineffective in any way with regard to a possible suppression motion. Counsel has demonstrated a reasonable strategic basis for her decision and the Defendant has not established either that a suppression motion would have been granted or that the outcome of the trial would have been any different had suppression been sought. Insofar as the Defendant utterly failed in establishing his

7

ineffective claim, this Court was well within its discretion in dismissing the Amended PCRA Petition without a hearing. This claim must fail.

Accordingly, for the above reasons of fact and law, this Court's Order of June 25, 2015 must be affirmed.

BY THE COURT:

_____, J.

Dated:   September 22, 2015

8